Both step up and identify yourselves. Good morning, Alexander Munches for Mr. Golden. Assistant State's Attorney in that college for the people. Okay. And remind me to ask you a question after about the Brown case that you were on. You weren't here. Your partner was. Your partner in crime was. All right. You know the rules and we give you time if we ask a bunch of questions. Thank you. Good morning. Good morning. May it please the court. As a preliminary matter, I'd just like to note that Mr. Golden has raised several issues and one of those issues is a fines and fees issue. And I think this court is probably aware that the Illinois Supreme Court issued Rule 472 yesterday. It goes into effect on Friday. I spoke with counsel before the argument and if this court would allow us to leave, we would like to file a motion about the effect of that rule on the fines and fees issue in this case. Perhaps seven days, though, this court's discretion should guide. That's fine. Thank you. So Mr. Golden was charged in pertinent part with two armed robberies occurring on June 4th, 2014. After a bench trial, the Honorable Dominica Stevenson convicted him of one count and acquitted him of the other. Mr. Golden's bench trial occurred separately from but simultaneously with bench trials for two co-defendants. These parallel proceedings arose from events occurring over several days. But again, in pertinent part, on June 4th, there was a robbery that occurred on a gas station lot. Officers never recovered a weapon from this, but there's surveillance footage of this 45-second long encounter. In the footage, your honors will see a van and sedan parked between two gas pumps. Robbery occurs between those two cars. You don't see a gun pointed. You see two men approach a third, that's Cedric Washington, and appear to pat him down. His brother, Eric, looks from over the hood of the car and then retreats about 10 feet. Eric then looks on with a third man, Jody Tony, the gas station manager, from a distance of about 15 feet. Most of the time, we just see an extended pat-down of Cedric Washington that is about a 35-40 second pat-down. Now, the trial court expressly found the following regarding this robbery. Cedric and Eric were both credible, not impeached, Eric had the best view, Cedric had a good opportunity to observe, and the surveillance footage and Jody Tony's testimony corroborated Cedric and Eric. On appeal, Mr. Golden raises several issues concerning this robbery. One is about the sufficiency of the evidence that a firearm was used during the commission of this offense. The second is about the need for a preliminary training inquiry. Now, Mr. Golden is prepared to address each issue, but for today, I would like to focus on whether the state proved beyond a reasonable doubt that a firearm was used during the gas station robbery. Your Honors, this issue is simple. People v. Wright directly controls it. The issue is, when is it reasonable to infer, based on witness testimony alone, that a firearm was used? In Wright, the Illinois Supreme Court synthesized its own case law, not appellate law, by reaffirming the principle that a single-eyed witness may offer proof beyond a reasonable doubt and applying that principle in a case like Mr. Golden's, where no firearm is recovered and witnesses testify about a fleeting look or glimpse at the alleged firearm. Now, under Wright, the parties agree that this Court should assess the witness's ability to observe under the particular circumstances, along with any additional knowledge of firearms. Now, importantly, Your Honors, prior knowledge is neither necessary nor sufficient, but may suffice with unequivocal, non-conclusory observations. We know that prior knowledge is not necessary under people v. Washington. Indeed, in the opening brief, Mr. Golden offers examples of what might suffice to prove without prior knowledge. We also know that prior knowledge is not sufficient. That's why Mr. Golden cited people v. McLaren in the motion to cite additional authority. Indeed, what we're asking here, and what we're asking this Court to analyze, is whether or not there was sufficient evidence from the witness's testimony that was unequivocal and non-conclusory. It's like they have three witnesses that saw the gun or some part of the gun here, right? Yes, we have, in particular, we have the surveillance footage where you don't see a gun. The Court also considered the witness testimony, and importantly, the gun was never recovered. Now, regarding the three witnesses, as you asked, Justice House, these three witnesses agreed on a single thing, the word gun. So, Cedric Washington testified that he saw the handle of a black gun in Mr. Golden's waist. That lasted a split second. It was an unknown gun type to Cedric, and he said it was black, but he also said maybe it was a gun, maybe it was a toy. Of course, he did believe it was a gun, but he never testified about prior familiarity. Now, his brother, Eric, who was across the way, across the car, he said he got a clear view from four to five feet. He also saw it for seconds at most. He said it was an unknown gun type, maybe a gun, maybe a toy, but he didn't agree on color. He said black, maybe. Again, Eric did believe it was a gun, however, he never testified about prior familiarity. I might agree with your analysis, but we're limited by the standard of review here, and how do we get past that? Yes, and I think that this is, in particular, why we cited People v. McLaurin. McLaurin gives us a very nice term of art, namely, conclusory testimony. And so, when a witness says the word gun, that alone isn't enough. Now, in the briefing, before McLaurin was issued, we described that as baseless, subjective, but I think the term of art, as issued by this Court, is conclusory. And what we have is we have three witnesses, Cedric, Eric, and Jody Toney, making conclusory assertions about what they saw. But the trier of fact looks at what they said, and he believes them. And there is no minimum requirement for showing a defendant possessed a gun, and that's cited both in Jackson, Charles, Field, and Malone. Sure, and I think... So, you've got to overcome that, and just saying, we didn't find a gun, means nothing. Of course, yes. You know, in Wright, the Illinois Supreme Court reaffirmed the principle that a single eyewitness may offer proof beyond reasonable doubt. And so, what Wright teaches us is that we, in your honors, we have to take a deep dive into what was the testimony offered at trial. So... What would actually, in your view, be sufficient evidence to support a conclusion that it was a firearm? What could they have presented? I suggest that this Court looks to people of the Wright. In Wright, you had a witness, Perez, who heard the phrase, this is a robbery. He saw a black, semi-automatic gun specifically. He had experience with such guns. He felt a barrel in his back, and he was 100% confident about his conclusion. I was, of course, joined with testimony from Seagate, I think I'm pronouncing that correctly, still in Wright, where they heard that this was a robbery, and they saw a handle in the waist. There was, again, a third witness who said they saw what they thought was a 9mm pistol. They had also seen guns before. What you have in Wright is distinguishable from this case, because you have witnesses who are making assertions about types of guns, and they're telling you that they have prior familiarity, and they're giving you specific details. But is it your position that the average person would be able to testify about the type of gun and the caliber and all of that? I mean, I wouldn't be able to do that. Sure, and I think in the opening brief, page 16, you see that we offer an example of, say, a witness who doesn't have prior familiarity, either seeing ammunition or hearing the gun loaded. Now, in this case, in the separate case, if the gun went off. Those are types of things that the state may rely on in order to prove beyond reasonable doubt. But you've got to overcome Charles and Maloney, and you haven't given me anything that gets me there. So Charles is Washington. In Washington, you had somebody who was held at gunpoint for several minutes and got a look at the gun for several minutes. Similarly, in Charles, you had a person who was held at gunpoint for several minutes, was driven in a car with a gun while he was on the driver's lap. That's the sort of long-form look. So you're saying the time element is insufficient here? Yes, this is split seconds at most. Even though you've got three independent people seeing it over a period of time, not simultaneously. So the robbery occurred over 45 seconds, and all three men saw what they saw during that short span of time. The man who was robbed, Cedric Washington, said he saw a handle or something for a split second. Error confirmed, that's what happened to Cedric. Jody Toney says that he was exiting the gas station and he saw a gun being pointed at a man. Of course, the video doesn't bear that out, and of course Jody Toney during trial had difficulty seeing from the witness stand to the actual surveillance video that was being played in court. So how much time do you say it takes? So I think the lesson we take away from Wright is that there are no hard and fast rules in this context, but we do look at all the circumstances. And what we have, especially out of McLaurin, is just conclusory testimony. But the judge didn't see it as conclusionary. And we have to consider primarily what the judge at the trial level felt and saw. Exactly. And this happens to be one of the better judges. I think that Judge Stevenson did a fine job in this case, but I do think that Judge Stevenson relied on conclusory testimony to draw an inference about the existence of the firearm. I'm not sure how we would get anything. I keep hearing you say conclusory. So there is some testimony that I think it was Toney or Toney, he saw a gun. He saw a gun. If you saw a gun, would you recognize it as a gun? Personally? Yeah. Yes. Okay. And I would say the type of gun it was, and I would give details about the color, talk about the handle. Well, we did have Washington who did testify that he saw the handle. Yes. And isn't there also some testimony from someone that it was black? Yes. I mean, I think what you're seeking is for us to be able to conclude that you've got to tell us the caliber, you've got to tell us the weight, you have to tell us so many more specifics about the firearm before we can conclude or the trial court could conclude that it was a gun. No, no, no, Your Honor. Again, look no further than opening brief. We give examples of how a witness, without prior familiarity, could give testimony that would allow a fire fact to reasonably conclude. And this is why McLaren is so important. McLaren is a case where a police officer saw a defendant walking with a gun in hand. The police officer said, it looked like a gun. It was black. I saw the barrel. I saw the handle. McLaren said, that is conclusory testimony. It just said gun. And that's what we have here. We have three witnesses, none of whom have testified about their prior familiarity. That distinguishes it from McLaren where a police officer is presumptively familiar with firearms. And we have just simply three witnesses agreeing on the word gun. Your Honors, there's no testimony from Cedric, Eric, or Jody about prior familiarity. They only briefly saw this alleged firearm. Their testimony is conclusory, and their surveillance footage is both grainy at a high angle from a distant place. All these details under Wright, under existing Supreme Court case law, should lead this Court to the conclusion that there was not sufficient evidence that a firearm is used. Again, this case asks what constitutes proof beyond a reasonable doubt when the State presents testimony of witnesses who recall only glimpses or fleeting looks at alleged firearms. Here, a handle was flashed. No physical contact, no gun type was offered, no consensus on color, and no prior familiarity with firearms. Your Honors, this is not proof beyond a reasonable doubt. We ask that this Court reduce Mr. Golden's conviction to aggravated robbery and remand the matter for resentencing. If there are no further questions. No, thank you. Thank you. Good morning again. Assistant State's Attorney, Annette Collins. Before I get into the facts of this case, I want to talk about the legal framework that we analyzed this issue in. It seems to be the defendant's primary argument is we have to have more than a single witness' observation of the gun and testimony that it is a gun. But that is not the law. That is not Washington. That is not Wright. And that is none of the appellate court cases that have addressed this issue. There is no requirement in any of these cases that there be prior knowledge or experience. We know that. Washington, the witness, saw the gun for several minutes, granted, but had no prior experience. And I would suggest to your Honors that this distinction between several minutes and 45 seconds is really not at all legitimate. Because I could stop talking for 45 seconds and we could all agree that that is a fairly lengthy period of time. We're not talking about a fleeting glance. We're talking about an event in a gas station that the victim was approached by the defendant who was armed with a black gun. The victim was also patted down by somebody behind him. And the victim's brother also saw this happen and discussed how there was also a gun. Now, these two witnesses were corroborated by another witness, the manager of the gas station, who also saw a gun during this robbery. The fact that the video itself doesn't show the gun, again, is not significant. Because the video is not a very good quality video and it's a gas station video, so its positioning is not clear to see what is in defendant's hand. But remember, the victim is standing within feet from defendant. The witness is only, I would say, inches. The witness is only feet. And then Jody Toney, the other witness, is, again, within eyeshot of the event where defendant used the gun. The other thing that defendant suggests that Jody Toney is not a credible witness because at trial he had some difficulty or he complained about not being able to see at trial. This is not really a legitimate basis for the court to reject his testimony below. Because Jody Toney not only described the events exactly the way the other two witnesses saw it, so he clearly had a view of what was happening. Jody Toney described the blue minivan that defendant came out of and went back into after the robbery and provided police with its license plate number. So clearly Jody Toney could see and also observe the fact that there was a gun. And these are the three occurrence witnesses. But that isn't the end of the case. I did not hear defendant discuss at all or defense counsel discuss at all two other witnesses that were presented before the trier of fact, the judge, in this case. One was a other crimes witness who testified that he was robbed that very morning, only hours before the gas station robbery in this case. And he testified that he was approached by a blue minivan, or excuse me, his description to police was that he was approached by a blue minivan that's also on video. And two offenders approached him, one that was for certain armed with a gun, and the other offender also had a gun. He did say that at trial, but immediately after defendant's arrest, defendant was wearing DeAndre Bowman's Gucci belt. And DeAndre Bowman, the victim of that earlier robbery, identified defendant to police as the armed robber. So for whatever reason, he didn't identify defendant at trial, and the judge acquitted defendant of that earlier crime. However, that doesn't stop us from looking at that event as other crimes evidence. Because there's enough in this record to suggest that while defendant was acquitted of the crime, he actually committed that crime. And that evidence supports the later robbery with a black gun. And if we take a look at DeAndre Bowman's testimony about his robber, his robber was carrying a black semi-automatic weapon, a Glock 40 or 45. That is Mr. Bowman's testimony. And I would suggest to your honors that that adds additional support for the three witnesses' testimonies of the gas station armed robbery. Defendant puts a lot of, or defense counsel puts a lot of significance on this McLaurin case. The McLaurin case has a lot of problems. Analytically, the majority opinion is unsound. In that case, the majority says that the armed habitual criminal offense, which was charged in the McLaurin case, is different than armed robbery. It's somehow a different element. Somehow there's more proof required. Needless to say, we filed a PLA on that case. The other problem with McLaurin is that the police officer who testified that she saw a defendant with a chrome gun in his hand was 50 feet away. So that was part of why the concurring judge, who didn't agree with that analysis about this bifurcation between armed habitual criminal firearm element and armed robbery firearm element, she still agreed with the reversal. The problem with that is both the majority and the concurring opinion in McLaurin ignored a crucial piece of evidence in the sufficiency analysis. That piece of evidence was after the officer saw a defendant running from 50 feet away with this firearm, or what she believed was a firearm, defendant jumped in a van. That van drove away. Police followed. It was eventually stopped. The officer, when she came up on that van, was on the driver's side, and defendant got out of the passenger side. She couldn't see what defendant was doing when he got out of the passenger side. Police recovered a firearm from underneath that van, and it was a chrome firearm. Now, it wasn't in defendant's hands when he was arrested, but the reasonable inference under the Jackson v. Virginia standard is that that was the gun that the officer had seen defendant with earlier, and defendant discarded it before he could get captured and arrested by police. So I want to take that McLaurin case that defendant puts a lot of effort into and cabin it and get rid of it because it does not, it is not consistent with either Washington right or any of the appellate decisions that have addressed this issue. And there was some points that defense counsel said that I think are worth repeating that there is no requirement that a witness have prior knowledge of firearms. There is no requirement that there be a description of the caliber, the color, the weight, composition. All that is required, and this is our Supreme Court telling us, is that the witness observe the firearm and testify that it was a gun. And if there is sufficient evidence, which there is in this case, we view it in the light most favorable to the prosecution, and in this case there was sufficient evidence. Now, Justice Fitzgerald-Smith, you had said something about a Brown case and I have to say that I can't remember. I come to my arguments. Oh, it's not relevant to this. No, no, I just wanted to, when you sit down and we're done, I'll say something. Oh, okay. That's good. All right. I misunderstood. And unless this Court has any questions, that is the people's position. It is our position in our briefs, and we believe it is supported by every single case that has addressed this claim. Thank you. Thank you. So, Your Honors, the issue, again, before this Court, is that under Wright, we need to look at the testimony. We've got to see if there's, what was the ability of the particular witnesses to observe, along with any additional knowledge about firearms. We know prior knowledge is neither necessary nor sufficient, but may suffice with unequivocal, non-conclusory observations. The State suggested that under Supreme Court precedent, they just need to throw a witness on the stand and have them say the word gun. That's not true. Wright doesn't support that formulation. Washington doesn't support that formulation. Again, this is a case where there's a brief, fleeting glimpse at a weapon. The State suggested they looked at it for 45 seconds. No, Cedric Washington said he saw it for a split second. Eric, across the car, similarly, seconds. Three, four, five seconds. He turns, and he walks away. He goes back towards where the gas station manager is. So we're talking about witnesses who have brief moments to look at these objects. It's critical that this Court, under Wright, really assess this testimony. It is not the case, as the State suggests, that having a witness say the word gun is enough. The State criticizes McLaurin. I think there's really no reason to do that. McLaurin faithfully cites all controlling Supreme Court precedent. I know that the State suggested perhaps they're going to file a PLA. That's fine. But I think that under Wright and Washington, and under the facts of this case, the State simply did not prove beyond a reasonable doubt that a firearm was used. Now, I guess just one more point. A final point, really. The State suggests that, you know, there were two other witnesses. So I guess the parties disagree about sort of what was the evidence the State had presented. As our position, the State has really just cobbled together pieces of the record and presented them to this Court without context. The State says five separate witnesses saw a gun. Judge Stevenson expressly found that the evidence relevant to her determination was the testimony of Eric, Cedric, Jody, and the surveillance video. The difficulty with the State's suggestion that there was a fourth witness, DeAndre Bowman, is that there is an acquittal in that case. The other difficulty is that the State suggests there is a fifth witness. The State didn't mention it during oral argument. In the briefing, they suggested a man named James Gorman provided evidence. The problem with that is that defense counsel below did a motion to strike Gorman's testimony as it related to Golden's case. And the Court granted that oral motion. So that quite literally was not evidence against Mr. Golden. In any event, this Court need only look at the trial court's express findings, U8 to U9 in the record. In there, you see that it relied on Cedric, Eric, and Jody's testimony as well as surveillance video. For all the reasons that we laid out in our opening argument and now in rebuttal, that was insufficient. So we asked this Court to reduce this conviction, Mr. Golden's conviction, to aggravated robbery and remand the matter for resentencing. Thank you. Thank you. You both did a very nice job. Your briefs are very well written. What I had asked, I don't think that is a Ms. Bond back there. She's not here. In the case before, I had made a comment, not criticizing her, but criticizing the circuit court. But the interesting thing, Ms. Bond did such a nice job that when we went back, we argued for about a half an hour about how she moved the evidence and made it work. So I just wanted her to know that she did an excellent job on that case. All right. Thank you both.